IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

JOHN LYMAN,                               :

    Plaintiff,                          :

vs.                                       :        CA 15-0378-CG-C

BISHOP STATE COMMUNITY                    :
COLLEGE; ALABAMA COMMUNITY
COLLEGE SYSTEM,[1]                        :

    Defendants.

## REPORT AND RECOMMENDATION

This cause is before the Magistrate Judge for issuance of a report and recommendation, pursuant to 28 U.S.C. § 636(b), on the complaint (Doc. 1) and the defendants' motion to dismiss Count I of the complaint and the claim for punitive damages set forth in Count II of the complaint (Doc. 9). The plaintiff was extended the opportunity to file a response in opposition (*see* Doc. 15); however, he filed no response to the motion to dismiss (*see* Docket Sheet).[2] Upon consideration of the foregoing pleadings, the Magistrate Judge recommends that the Court **GRANT** the defendants'

---

[1] Plaintiff named in the style of his complaint, and elsewhere in the complaint, as a party defendant the Alabama Department of Post-Secondary Education. (*See* Doc. 1.) The Court having now been informed that this defendant was renamed the Alabama Community College System on May 5, 2015 (Doc. 9, at 1 n.1), the Clerk of Court is instructed to reflect on the docket sheet that the Alabama Community College System is the proper party defendant in this matter (as opposed to the Alabama Department of Postsecondary Education).

[2] Given the plaintiff's failure to file a response to the pending motion to dismiss, there is no reason to await a reply by the moving party before entry of a report and recommendation.

motion to dismiss Count I of the complaint and the claim for punitive damages set forth in Count II of the complaint (Doc. 9).

## FINDINGS OF FACT

On July 28, 2015, John Lynam filed his intentional interference with employment relations and Title VII race discrimination complaint in this Court and therein named, in the style of the complaint, as proper party defendants Bishop State Community College ("Bishop State") and the Alabama Department of Postsecondary Education (now, Alabama Community College System—"ACCS"). (Doc. 1.) Subsequent to the filing of the complaint, plaintiff served only those defendants named in the style of the complaint. (Docs. 4-6; *see also* Doc. 7.) However, the factual allegations of the complaint (Doc. 1, at 1-3), as well as Count I alleging intentional interference with employment relations (*id.* at 3), are laced with references to Kathy Thompson, who plaintiff claims, at times, is a defendant (*see id.* at 1-3).[3] Of course, Thompson is not a named defendant in the style of the complaint and, more importantly, plaintiff has not served Thompson with summons and a copy of the complaint. (*See* Docket Sheet.)

The factual allegations underlying plaintiff's complaint consist of the following:

> 2. . . . Kathy Thompson, referenced herein, was the Dean of the Technical School for Bishop State Community College at all times pertinent to this action. Dean Thompson began her employment with Bishop in August, 2013.
>
> 3. During November 2013, the Plaintiff was hired by Bishop to serve as it[]s Executive Director of Workforce Development. Plaintiff was well[]qualified for this position. His employment actually began in early December, 2013. One of his supervisors was Defendant Thompson. Approximately three[]days after Plaintiff's employment began, his wife died of cancer. Although Plaintiff wanted to continue working, Defendant

---

[3] Indeed, the manner in which plaintiff sets forth Count I of the complaint indicates to the Court that he means to assert the claim solely against Thompson, a person who has not been served with process.

>Thompson insisted that he take an extended leave of absence through December, 2013. Shortly after Plaintiff returned to work in early January, 2014, he was terminated. Plaintiff's employment lasted only eight[]days with Bishop. During that time there was no incident otherwise warranting his termination. Plaintiff's termination was initiated by Thompson, an African-American, and ratified by Dr. James Lowe, an African-American who was president of Bishop at that time.
>
>4. During the few days that Plaintiff was employed, he was frequently told by Thompson that ["]she may have him terminated[,"] even though she does not possess the actual authority to terminate any employee. Nonetheless, because Thompson forced the Plaintiff to take an extended leave of absence, it appeared that Plaintiff had abandoned his job within days of starting.
>
>5. Plaintiff submits that his extended absence at the outset of his employment resulted in his termination by Bishop. Plaintiff submits that Thompson deliberately forced him to take extended leave following his wife's death, and then, upon his return in January, 2014, recommended his termination to Lowe based upon his absence from the job, and this recommendation was affirmed. All of Thompson's actions arose out of a motive of race discrimination, and were done in concert with and under the approval and supervision of Dr. James Lowe.
>
>6. Plaintiff submits that the actions of Thompson and Lowe described above were undertaken on behalf of Bishop and in the scope of their employment for Bishop, and were intentional, based on Plaintiff's race, Caucasian, and done to cause his termination.

(Doc. 1, at ¶¶ 2-6.) Plaintiff sets forth two claims in his complaint: a claim for intentional interference with employment relations; and a Title VII race discrimination claim. (*Id.* at ¶¶ 7-13.) As aforesaid, the claim for intentional interference with employment relations consists of averments solely against Kathy Thompson, who is referenced as a defendant but whose name is not contained in the style of the complaint and is an individual who has yet to be served with process. (*See id.* at ¶¶ 7-9.) Plaintiff's Title VII race discrimination claim is directed to Bishop State and ACCS. (*See id.* at ¶¶ 10-13.)

On October 19, 2015, Bishop State and ACCS filed a Rule 12(b)(1) and (6) motion to dismiss Count I of the complaint and the claim for punitive damages set forth in Count II of the complaint. (Doc. 9.) The defendants aver that "[t]o the extent Plaintiff

3

seeks to pursue [Count I] against the named defendants—Bishop State and/or ACCS—under a vicarious liability theory (or otherwise), the count should be dismissed because these defendants are immune to such claim and the count otherwise fails to state a claim upon which relief can be granted." (*Id.* at 1.) As for the request for punitive damages in Count II, the defendants stake the position that this request "is due to be dismissed because 42 U.S.C. § 1981a(b) prohibits the award of punitive damages against state governmental agencies." (*Id.* at 2.)

## CONCLUSIONS OF LAW

    A.    **Motion to Dismiss Standard**.

Pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, a defendant may move to dismiss a complaint on the basis that the plaintiff has failed to state a claim upon which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). A Rule 12(b)(6) motion questions the legal sufficiency of a complaint (or portions of a complaint); therefore, in assessing the merits of a Rule 12(b)(6) motion, the court must assume that all the factual allegations set forth in the complaint are true. *See, e.g., United States v. Gaubert*, 499 U.S. 315, 327, 111 S.Ct. 1267, 1276, 113 L.Ed.2d 335 (1991); *Powell v. Lennon*, 914 F.2d 1459, 1463 (11th Cir. 1990). Moreover, all factual allegations are to be construed in the light most favorable to the plaintiff. *See, e.g., Brower v. County of Inyo*, 489 U.S. 593, 598, 109 S.Ct. 1378, 1382, 103 L.Ed.2d 628 (1989).

Rule 8(a)(2) generally sets the benchmark for determining whether a complaint's allegations are sufficient to survive a Rule 12(b)(6) motion. *See Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 & 678, 129 S.Ct. 1937, 1949, 173 L.Ed.2d 868 (2009) ("Under Federal Rule of Civil Procedure 8(a)(2), a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief.' As the Court held in *Twombly*, . . . the pleading standard Rule 8 announces does not require 'detailed factual allegations,'

but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation."). Indeed, "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Id.* at 678, 129 S.Ct. at 1949, quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 1964-1965, 167 L.Ed.2d 929 (2007). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.*, quoting *Twombly*, 550 U.S. at 557, 127 S.Ct. at 1955.

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face. A claim that has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.
>
> Two working principles underlie our decision in *Twombly*. First, the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice. Rule 8 marks a notable and generous departure from the hyper-technical, code-pleading regime of a prior era, but it does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions. Second, only a complaint that states a plausible claim for relief survives a motion to dismiss. Determining whether a complaint states a plausible claim for relief will . . . be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense. But where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not show[n]–that the pleader is entitled to relief.

*Id*. at 678-679, 129 S.Ct. at 1949-1950 (internal citations and quotation marks omitted); *see also id*. 680, 129 S.Ct. at 1951 (a plaintiff must nudge his claims "'across the line from conceivable to plausible.'"); *see Speaker v. U.S. Dep't of Health & Human Services Centers for Disease Control & Prevention*, 623 F.3d 1371, 1381 (11th Cir. 2010) ("[G]iven the pleading standards announced in *Twombly* and *Iqbal*, [plaintiff] must do more than

recite [] statutory elements in conclusory fashion. Rather, his allegations must proffer enough factual content to 'raise a right to belief above the speculative level.'"); *Sinaltrainal v. Coca-Cola Co.,* 578 F.3d 1252, 1260 (11th Cir. 2009) ("Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. In evaluating the sufficiency of a plaintiff's pleadings, we make reasonable inferences in [p]laintiff's favor, but we are not required to draw plaintiff's inference. Similarly, unwarranted deductions of fact in a complaint are not admitted as true for the purpose of testing the sufficiency of plaintiff's allegations. A complaint may be dismissed if the facts as pled do not state a claim for relief that is plausible on its face." (internal citations and quotation marks omitted)), *abrogated on other grounds as stated in Mohamad v. Palestinian Auth.,* ___ U.S. ___, 132 S.Ct. 1702, 182 L.Ed.2d 720 (2012).

B. **Has Plaintiff Stated a Claim Against Bishop State and ACCS for Intentional Interference with Employment Relations**? Initially, the Court questions whether plaintiff intends to pursue a claim for intentional interference with employment relations against Bishop State and ACCS as nowhere in the relevant paragraphs (*see* Doc. 1, at ¶¶ 7-9) does he make any mention of the named defendants. More importantly, if plaintiff intended to assert such a claim against Bishop State and ACCS, he has failed to state a claim upon which relief may be granted. In reaching this conclusion, the Magistrate Judge focuses solely upon the defendants' argument that they cannot be liable in tort for interfering with their own employment relationship with plaintiff.[4]

---

[4] The undersigned does not question the correctness of the defendants' immunity analysis (*see* Doc. 9, at 3-5) and would refer to that analysis as further support for granting the motion to dismiss Count I; however, Count I is due to be dismissed without the need to delve into the intricacies of absolute and Eleventh Amendment immunity.

6

"Under Alabama law, the tort of wrongful interference with a business relationship has five elements: (1) the existence of a protected business relationship; (2) of which the defendant knew; (3) to which the defendant was a stranger; (4) with which the defendant intentionally interfered; and (5) damage." *Edwards v. Prime, Inc.,* 602 F.3d 1276, 1302 (11th Cir. 2010), citing *White Sands Group, L.L.C. v. PRS II, LLC,* 32 So.3d 5, 14-15 (Ala. 2009). As recognized by the Eleventh Circuit, the third element places the burden on plaintiff to plead "that the defendant was a stranger to the protected business relationship with which the defendant interfered." *Id.,* citing *Waddell & Reed, Inc. v. United Investors Life Ins. Co.,* 875 So.2d 1143, 1154 (Ala. 2003). "A plaintiff fails to meet that burden when the defendant is a party in interest to the allegedly injured business relationship." *Id.* (citations omitted); *see also id.* ("The Alabama Supreme Court has stated that 'a defendant is a party in interest to a business or contractual relationship if the defendant has any beneficial or economic interest in, or control over, that relationship.' *Tom's Foods, Inc. v. Carn,* 896 So.2d 443, 454 (Ala. 2004). . . . When the defendant is an essential party to the allegedly injured business relationship, the defendant is a participant in that relationship instead of a stranger to it.").

Count I of the complaint fails to allege any facts indicating that Bishop State and ACCS were strangers to the business relationship with which they putatively interfered. Plaintiff does not mention Bishop State or ACCS in Count I (Doc. 1, at ¶¶ 7-9) and all other references to Bishop State and ACCS in the complaint indicate that Lynam was employed by Bishop State (*id.* at ¶¶ 1 & 3), which is "organized and operated under the supervision" of ACCS (*see id.* at ¶ 2). Such allegations establish that Bishop State and ACCS, far from being strangers to the allegedly injured relationship, were parties to that relationship. *Compare Edwards, supra,* 602 F.3d at 1302-1303 *with Waddell & Reed, Inc., supra,* 875 So.2d at 1154 ("Clearly, a party to a contract or a business relationship cannot

7

be liable for tortious interference with that contract or business relationship.") and *Harrell v. Reynolds Metals Co.,* 495 So.2d 1381, 1387-1388 (Ala. 1986) ("Although the torts of interference with contractual relations and interference with business relations are recognized under Alabama law, the alleged tortfeasor, by definition, must be independent of, or a third party to, the particular relation. It is well settled that a party to the relation cannot be held liable for interference with *that* relation." (internal citations, footnote, and quotation marks omitted; emphasis in original)). Because Bishop State and ACCS were not strangers to the business relationship with which they allegedly interfered, Count I of the complaint fails to state a claim under Alabama law and should be dismissed. *Compare Edwards, supra,* 602 F.3d at 1303 *with Coates v. Natale,* 409 Fed.Appx. 238, 240 (11th Cir. Nov. 8, 2010) ("The district court did not err in dismissing Coates's tortious-interference-with-contract claim because the Defendants [including Central Georgia Technical College and Technical College System of Georgia] were not strangers to the contract with which they allegedly interfered, and thus, they could not be liable under such a theory."), *cert. denied,* 562 U.S. 1296, 131 S.Ct. 1700, 179 L.Ed.2d 633 (2011). Accordingly, Count I of plaintiff's complaint is due to be **DISMISSED** for failure to state a claim upon which relief may be granted.

    C.    <u>**Plaintiff's Claim for Punitive Damages in Count II**</u>. Count II of plaintiff's complaint seeks recovery under Title VII for race discrimination. (Doc. 1, at ¶¶ 10-13.) Lynam specifically demands a judgment against Bishop State and ACCS for certain damages, including punitive damages. (*Id.* at 4.) Bishop State and ACCS correctly argue that punitive damages are not recoverable in a Title VII action against governmental agencies. *Compare* 42 U.S.C. § 1981a(b)(1) ("A complaining party may recover punitive damages under this section against a respondent (***other than a government, government agency or political subdivision***) if the complaining party demonstrates that the

8

respondent engaged in a discriminatory practice or discriminatory practices with malice or with reckless indifference to the federally protected rights of an aggrieved individual." (emphasis supplied)) *with Betts v. Conecuh County Bd. of Educ.,* 2014 WL 7411670, *8 (S.D. Ala. Dec. 30, 2014) (in dismissing Title VII punitive damages claim against the defendant school board, this Court specifically recognized that "'[t]he Civil Rights Act of 1991 allows a Title VII plaintiff to recover punitive damages in certain circumstances; however, it expressly precludes recovery of punitive damages from governments, government agencies, and political subdivisions. 42 U.S.C. § 1981a(b)[.]'") and *Young v. City of Mobile,* 2014 WL 2739422, *2 (S.D. Ala. Jun. 17, 2014) ("As to his claim pursuant to . . . Title VII, 42 U.S.C. § 1981a(b)(1) precludes an award of punitive damages against a 'government, government agency or political subdivision.'"). And because Bishop State and ACCS are state agencies, the undersigned **RECOMMENDS** that the Court dismiss the punitive damages demand in Count II.

## CONCLUSION

Based upon the foregoing, the Magistrate Judge recommends that the Court **GRANT** the motion to dismiss filed by Bishop State and ACCS (Doc. 9) and **DISMISS** Count I of plaintiff's complaint and the punitive damages demand in Count II of the complaint.

## NOTICE OF RIGHT TO FILE OBJECTIONS

A copy of this report and recommendation shall be served on all parties in the manner provided by law. Any party who objects to this recommendation or anything in it must, within fourteen (14) days of the date of service of this document, file specific written objections with the Clerk of this Court. *See* 28 U.S.C. § 636(b)(1); FED.R.CIV.P. 72(b); S.D.ALA. L.R. 72.4. The parties should note that under Eleventh Circuit Rule 3-1, "[a] party failing to object to a magistrate judge's findings or recommendations

contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions if the party was informed of the time period for objecting and the consequences on appeal for failing to object. In the absence of a proper objection, however, the court may review on appeal for plain error if necessary in the interests of justice." 11th Cir. R. 3-1. In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the Magistrate Judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the Magistrate Judge is not specific.

    **DONE** this the 10th day of November, 2015.

        s/WILLIAM E. CASSADY
        **UNITED STATES MAGISTRATE JUDGE**